**DRAVO MECHLING CORPORATION**

v.

**M/V JAMES F. TOWEY, Etc., et al.**

**Civ. A. No. 81–65.**

United States District Court, E. D. Louisiana.

March 19, 1982.

---

Christopher A. Helms, New Orleans, La., for plaintiff.

Robert W. Booksh, Jr., New Orleans, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent any of the following findings. of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

1. Plaintiff, Dravo Mechling Corporation ("Dravo"), is the owner pro hac vice of the barge UMC–2485.

2. Defendant, Nilo Barge Corporation. ("Nilo"), is the owner and/or operator of the M/V JAMES F. TOWEY, a 7,000 horsepower towboat approximately 168 feet in length and 50 feet in breadth.

3. On January 11, 1980, the M/V JAMES F. TOWEY and its tow of 19 river barges- was proceeding. downbound in the lower Mississippi River. The TOWEY had four tiers of loaded barges, with the foremost tier consisting of four barges. The combined length of the TOWEY and her tow was approximately 1,143 feet.

4. M/V JAMES F. TOWEY was to pick up two barges at Osceola, Arkansas. In order to facilitate the placement of these additional barges in his tow, Captain Hornback, the master, decided to position the head of the tow upriver against the current. The captain was obliged to perform this maneuver by steering his tow close to the right descending bank near plaintiff's moored barge, UMC–2485.

5. As Captain Hornback was positioning his vessel and tow in the manner described above, Captain T. R. Sayre was proceeding upriver aboard M/V MARGARET K, and he prepared for a port to port passing with M/V JAMES F. TOWEY.

6. However, due to the TOWEY's maneuvering, Captain Sayre decided not to pass the TOWEY and therefore reduced the engine speed of his vessel to idle in order to maintain his position approximately one quarter of a mile downriver of the TOWEY's tow.

7. Captain Sayre testified that as the M/V JAMES F. TOWEY was backing down, its lead barge struck plaintiff's moored barge, pushing it approximately 12 feet onto the mudbank. After this initial impact, the M/V JAMES F. TOWEY continued to come ahead, thereby forcing plaintiff's barge back into the river.

8. Plaintiff's barge, loose from its moorings, floated downriver. It was "caught" by Captain Sayre, and subsequently retrieved by a vessel from the Osceola Fleet Service. Captain Sayre noted the incident in the log of the M/V MARGARET K.

9. The collision caused an 18″ hole in the starboard stern compartment of the barge UMC–2485, as well as damage to its internal structure.

10. The UMC–2485 was satisfactorily moored so that the cause of the damage was the failure of M/V JAMES F. TOWEY to maneuver the flotilla in a proper manner as well as a failure to control the tow.

11. At the time this matter was submitted for adjudication, the depositions of the principal witnesses were filed into the record for my use. Thus, my determinations with respect to liability are based thereupon. The testimony of Captain Sayre, who was aboard a vessel in the vicinity of the accident, indicates that he had no

connection with either party. Thus, his description of the incident is that of an independent, disinterested third party. The testimony of Captain James Hornback, the captain of the M/V JAMES F. TOWEY, must be tempered by his own involvement in the collision. Primarily because of this factor, I am obliged to conclude that the account of the accident reported by Captain Sayre is the more credible.

12. As a result of the negligence of the crew of the M/V JAMES F. TOWEY, plaintiff has sustained damages in the amount of $11,525.57. This amount represents the uncontroverted cost of the actual repairs made to the barge.

### Conclusions of Law

1. The court has jurisdiction over this action as an admiralty and maritime claim and venue is proper in the Eastern District of Louisiana. 28 U.S.C. § 1333.

2. When a moving vessel collides with a properly moored vessel or a fixed object, there is a presumption that the moving vessel is at fault. *The OREGON*, 158 U.S. 186, 197, 15 S.Ct. 804, 809, 39 L.Ed. 943 (1895); *Pacific Tow Boat Co. v. States Marine Corporation of Delaware*, 276 F.2d 745, 750 (9th Cir. 1960); *Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa*, 527 F.Supp. 824, 832 (E.D.La.1981); *Freeport Sulphur Co. v. SS HERMOSA*, 1974 A.M.C. 1315, 368 F.Supp. 952, 953 (E.D.La.1973), *modified*, 1977 A.M.C. 508, 526 F.2d 300 (5th Cir. 1976). This presumption placed a burden of proof on Nilo to demonstrate either that its vessel was without fault or that the allision was occasioned by the fault of the moored barge or the result of an inevitable accident. *Bunge Corporation v. M/V FURNESS BRIDGE*, 558 F.2d 790, 795 (5th Cir.), *reh. and reh. en banc den.*, (1977); *Carr v. Hermosa Amusement Corp., Ltd.*, 137 F.2d 983, 985 (9th Cir. 1943), *cert. den.*, 321 U.S. 764, 64 S.Ct. 520, 88 L.Ed. 1060 (1944). The deposition of Captain Hornback submitted by Nilo, which was not corroborated by testimony from other crew members on watch at the time of the collision, is insufficient to satisfy Nilo's burden of proof on this presumptive matter. Thus, because Nilo has not demonstrated by any credible evidence that the barge UMC–2485 was improperly moored, it has not overcome the presumption of fault cast upon the JAMES F. TOWEY.

Plaintiff is instructed to prepare a judgment consistent with these findings and conclusions.